UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID GARDNER,<br>DIANE HERRON,<br><br>   Plaintiffs,<br><br>   v.<br><br>PAUL BISKER CONTRACTING, INC.,<br>PAUL BISKER,<br>KYLE R. TOM, II,<br><br>   Defendants. | No. 1:17-cv-01968-JPH-MJD |

**ORDER GRANTING IN PART DEFENDANT TOM'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiffs David Gardner and Diane Herron filed this lawsuit after a home they were having built was not completed. Defendant Kyle Tom II has moved for summary judgment. Dkt. [51]. For the reasons below, that motion is **GRANTED** except on part of Mr. Gardner and Ms. Herron's money-had-and-received claim.

**I.
Facts and Background**

Under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

After 25 years in the Cleveland, Ohio area, Mr. Gardner and Ms. Herron retired and decided to move back to Ms. Herron's hometown of Richmond,

1

Indiana. Dkt. 65-1 at 22 (Herron Dep. at 83). In March 2016, Mr. Gardner and Ms. Herron contracted with Paul Bisker's company, Paul Bisker Contracting, Inc., to build their retirement home. Dkt. 65-1 at 22 (Herron Dep. at 83); dkt. 65-3. Financing was through West End Bank, which provided draws on Mr. Gardner and Ms. Herron's construction loan. Dkt. 65-1 at 7 (Herron Dep. at 22–24); dkt. 65-5.

Defendant Paul Bisker and his company arranged with Mr. Tom to deposit several draws on the construction loan into a bank account belonging to KT Property Group LLC—a company controlled by Mr. Tom. Dkt. 65-7 at 11–12 (Paul Bisker Dep. at 38–41); dkt. 65-10 at 1 (Paula Bisker Dep. at 16). Mr. Tom then made payments from that account for Mr. Bisker. *See* Dkt. 12; dkt. 13.

Mr. Tom and Mr. Bisker also collaborated on other business endeavors. Another company controlled by Mr. Bisker, Sandbridge LLC, conveyed several subdivision lots to KT Property Group in 2016. Dkt. 65-9; dkt. 65-11 at 29–31 (Tom Dep. at 110–19). That same year, KT Property Group and Paul Bisker Contracting, Inc. were listed as the seller and contractor in another homebuilding contract. Dkt. 65-14.

In early 2017, Mr. Bisker informed Mr. Gardner and Ms. Herron that he would not be able to complete their home as agreed. Dkt. 65-6 at 5 (Paul Bisker Dep. at 15–16). Mr. Gardner and Ms. Herron sued Mr. Tom, Mr. Bisker, and Paul Bisker Contracting, Inc., asserting claims for: (1) breach of contract, (2) common law conversion, (3) criminal conversion, (4) criminal deception, (5)

money had and received, and (6) negligence. Dkt. 1. Mr. Tom moved for summary judgment. Dkt. 51.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Discussion

Summary judgment on Mr. Gardner and Ms. Herron's breach of contract, criminal deception, and negligence claims turns on whether Mr. Tom was in a partnership or joint venture—and is thus jointly liable—with Mr. Bisker or Paul Bisker Contracting, Inc. Dkt. 64 at 30, 32–35; dkt. 69 at 16–19. The remaining counts—conversion and money had and received—are against Mr. Tom directly. Dkt. 64 at 30–35; dkt. 69 at 17–120. The Court begins with the

3

partnership or joint venture issue, then turns to the remaining counts. Indiana law governs all issues. *See Wallace v. McGlothan*, 606 F.3d 410, 418 (7th Cir. 2010).

**A. Partnership or joint venture**

Indiana has adopted the Uniform Partnership Act, which defines "partnership" as "an association of two (2) or more persons to carry on as co-owners a business for profit." Ind. Code § 23-4-1-6(1). The essential elements of a partnership are thus: "(1) a voluntary contract of association for the purpose of sharing profits and losses which may arise from the use of capital, labor, or skill in a common enterprise; and (2) an intention on the part of the parties to form a partnership." *Byrd v. E.B.B. Farms*, 796 N.E.2d 747, 754 (Ind. Ct. App. 2003). "A joint venture is similar to a partnership except that a joint venture contemplates only a single transaction." *Id.*

Partners "are bound by the contracts of each other when made in the scope of the firm's business." *Life v. F.C. Tucker Co.*, 948 N.E.2d 346, 351 (Ind. Ct. App. 2011). So one partner is liable for another partner's breach of contract. *Id.* When parties do business together without forming a partnership, however, they do not assume that liability. *See id.* at 352. Here, Mr. Tom and Mr. Bisker did business together in multiple occasions and contexts. *See, e.g.*, Dkt. 52 at 18–19. The dispute is whether these business dealings show that Mr. Bisker and Mr. Tom were engaged in a partnership.

Indiana's Uniform Partnership Act defines a partnership and sets forth rules for determining the existence of a partnership. I.C. §§ 23-4-1-6, -7.

While the Act makes clear that there is no partnership without the sharing of profits and losses, it does not provide rules for determining what evidence is necessary or sufficient to imply profit sharing. *See id.* So the Court looks to Indiana case law for guidance. *See, e.g., Life*, 948 N.E.2d at 352.[1]

Sharing of profits and losses requires an "agreement to share the risk and the reward of the enterprise." *DLZ Ind., LLC v. Greene Cty.*, 902 N.E.2d 323, 330–31 (Ind. Ct. App. 2009) ("[P]rofit means a net financial gain or return for the joint venture [or partnership], not merely for the parties individually."). Mr. Tom argues that the Court must find there was no partnership because there is no evidence of profit and loss sharing between him and Mr. Bisker or Paul Bisker Contracting, Inc. Dkt. 52 at 24.

Mr. Gardner and Ms. Herron make three arguments in response. First, they allege that Sandbridge LLC—with Mr. Bisker as its sole member—conveyed subdivision lots to KT Property Group—with Mr. Tom as its sole member—"for little or no consideration." Dkt. 64 at 29. Mr. Gardner and Ms. Herron argue that the lack of consideration means that this transaction was not negotiated at arm's length, which in turn implies the existence of a partnership because only partners (and profit sharers) would make such a deal. *See* dkt. 64 at 29. Mr. Gardner and Ms. Herron, however, do not offer any evidence of profit and loss sharing. In the absence of such evidence, that deal is at most an agreement to work "jointly and in collaboration" or

---

[1] Under Indiana law, partnerships and joint ventures equally require profit sharing, so this order's references to partnerships include joint ventures. *See Byrd*, 796 N.E.2d at 754.

"collectively"—which is not enough to imply profit and loss sharing as required to show a partnership. *Linares v. El Tacarajo*, 119 N.E.3d 591, 601 (Ind. Ct. App. 2019).

The second argument is that Mr. Tom and Mr. Bisker profited by keeping some of Mr. Gardner and Ms. Herron's funds instead of using them on the house. Dkt. 64 at 29–30. Profit and loss sharing, though, requires shared risk, "co-ownership," and a "community of profits," *Life*, 948 N.E.2d at 352. Even if there is evidence that Mr. Tom kept money for himself and shared it with Mr. Bisker—and even if that could count as "profit"—that is no more than an "arrangement for a share of [a] total gross bill." *Id.* Such an arrangement does not establish a partnership because the money goes to the parties individually, instead of jointly. *Id.*; *see DLZ Ind.*, 902 N.E.2d at 331 ("Profit means a net financial gain or return for the joint venture, not merely for the parties individually.").

The third argument is that Mr. Tom's and Mr. Bisker's companies served together as the contractor on a separate homebuilding project referred to as the Parker Transaction. Dkt. 64 at 14; 30. But a partnership does not exist between parties that "neither share the same bottom line nor share in each other's profits" or losses. *DLZ Ind.*, 902 N.E.2d at 331. The evidence shows that any profit from that homebuilding project would have gone to Mr. Tom or to KT Property Group, but not to Mr. Bisker or one of his companies. Dkt. 65-7 at 16–17 (Paul Bisker Dep. at 58–61). In fact, there was a loss on the project that Mr. Tom or KT Property Group bore alone. Dkt. 65-11 at 35 (Tom Dep. at

133–44). Moreover, Mr. Bisker's company was paid wages, dkt. 65-7 at 16–17 (Paul Bisker Dep. at 60–61), which are "not a distribution of profit." *DLZ Ind.,* 902 N.E.2d at 331; *see Life,* 948 N.E.2d at 352–53 (holding that even an "arrangement for a share of the total gross bill [of a homebuilding contract] falls short of a 'co-ownership' or a 'community of profits' exhibited in a partnership"). The evidence only establishes that these companies worked "jointly and in collaboration" or "collectively," *see* dkt. 64 at 30, which is not enough to show a partnership, *Linares,* 119 N.E.3d at 601.

Mr. Gardner and Ms. Herron further ask the Court to find the existence of a partnership from the fact that they and James Backmeyer—a Mortgage Department Manager at West End Bank—believed that Mr. Bisker and Mr. Tom were partners. Dkt. 64 at 8–11. They also point to evidence that Mr. Tom's bookkeeper labeled at least one of his projects with Mr. Bisker as a "joint venture." Dkt. 64 at 19–20. These arguments cannot succeed because "merely calling a relationship" a partnership or joint venture does not make it so. *DLZ Ind.*, 902 N.E.2d at 328. Instead, the nature—rather than the name—of the relationship controls, and profit and loss sharing is an essential part of a partnership's nature. *Id.* at 330–31.

Mr. Gardner and Ms. Herron identify a litany of actions from Mr. Tom and Mr. Bisker that were related to or for the benefit of the other's business. Dkt. 64 at 25. But as explained above, such services can be and routinely are exchanged between individuals and businesses without the existence of a partnership. *See* I.C. § 23-4-1-7(4) (naming business relationships that a

7

partnership cannot be inferred from); *Life,* 948 N.E.2d at 353 (no partnership in the independent contractor context); *DLZ Ind.,* 902 N.E.2d at 331–32; *Byrd,* 796 N.E.2d at 755. Mr. Gardner and Ms. Herron nevertheless argue that those business relationships show a partnership, especially in light of others' perception of the relationship between Mr. Tom and Mr. Bisker. Dkt. 64 at 25–26. But accepting that argument would ignore the requirement under Indiana law that there is no partnership without sharing of profits and losses. Ind. Code § 23-4-1-6(1); *Byrd,* 796 N.E.2d at 754. While the evidence shows that Mr. Bisker and Mr. Tom were working for their mutual benefit, it does not show an agreement to share the risk and the reward of the enterprise.

While the existence of a partnership is ordinarily a fact question, evidence of profit and loss sharing is required to survive summary judgment. *Id.* at 328, 331–32. Mr. Gardner and Ms. Herron have designated no such evidence so there is no triable issue of material fact. Indiana courts have routinely held that summary judgment is proper in such circumstances. *See, e.g.*, *Linares,* 119 N.E.3d at 601; *Life,* 948 N.E.2d at 352–53; *DLZ Ind.,* 902 N.E.2d at 331–32; *Walker v. Martin,* 887 N.E.2d 125, 138 (Ind. Ct. App. 2008); *Byrd,* 796 N.E.2d at 755–56.

Mr. Gardner and Ms. Herron's arguments on their breach of contract, criminal deception, and negligence claims all depend on the existence of a partnership, so the Court grants Mr. Tom summary judgment on these claims. *See* dkt. 64 at 30, 32–35; *Nichols v. Mich. City Plant Planning Dept.,* 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that

8

were not raised in its response to the moving party's motion for summary judgment.").

**B. Conversion**

Mr. Tom next asks for summary judgment on Mr. Gardner and Ms. Herron's claim that he is civilly liable for the criminal conversion of several sums totaling $10,319.30. Dkt. 52 at 25–27; dkt. 64 at 31. He argues that the money cannot be "identified as a specific chattel" and is not "a determinate sum . . . entrusted to apply to a certain purpose," as required by Indiana law. Dkt. 52 at 25; *see Kopis v. Savage*, 498 N.E.2d 1266, 1270 (Ind. Ct. App. 1986). Mr. Gardner and Ms. Herron respond that the money is identifiable, separate chattel because it came from a draw check or was supposed to pay specific bills. Dkt. 64 at 32.

Here, the sums composing the $10,319.30 are pieces of much larger draws from West End Bank. *See* dkt. 65-5. Those funds were also commingled with other funds in KT Property Group's account. Dkt. 70 at 16–21. Under these facts, no piece of the $10,319.30 was ever a "*specific*" or discrete amount of money as required for a conversion claim. *Kopis*, 498 N.E.2d at 1270. And even it had been, it "ceased to be a separate, specifically identifiable chattel" when it was commingled with other funds because the parties showed no clear intent to keep the funds separated in some manner. *Stevens v. Butler*, 639 N.E.2d 662, 666–67 (Ind. Ct. App. 1994) (applying *Kopis*, 498 N.E.2d 1266); *see Bowden v. Agnew*, 2 N.E.3d 743, 751–52 (Ind. Ct. App. 2014).

9

Mr. Tom is therefore entitled to summary judgment on Mr. Gardner and Ms. Herron's conversion claim.

## C. Money had and received

Mr. Tom last asks for summary judgment on Mr. Gardner and Ms. Herron's money-had-and-received claim. Dkt. 52 at 28–29. Money had and received "is an equitable remedy that lies in favor of one person against another, when that other person has received money . . . under such circumstances that in equity and good conscience he ought not to retain the same." *Pufahl v. Nat'l Bank of Logansport,* 154 N.E.2d 119, 120–21 (Ind. Ct. App. 1958) (en banc). Money belonging to the plaintiff may be recovered if the defendant received it "by mistake of facts, or without consideration, or upon a consideration that has failed." *Id.* (emphasis removed).

Mr. Tom argues that he received a $59,947.77 draw, all of which he either paid out for the house at Mr. Bisker's direction or turned over to the trustee in the Biskers' bankruptcy. Dkt. 52 at 28–29. Mr. Gardner and Ms. Herron respond that Mr. Tom received a $63,117.01 draw and kept some of the money instead of using it to build the house. Dkt. 64 at 33–34.

Both sides present evidence on the amount of the draw. Mr. Tom points to his spreadsheets and bank statement, which show only $59,947.77. Dkt. 65-12; dkt. 65-13; dkt. 70 at 20. Mr. Gardner and Ms. Herron cite the draw check showing $63,117.01 and Mr. Bisker's testimony that the check went into KT Property Group's account. Dkt. 65-5 at 9; dkt. 65-7 at 12 (Paul Bisker Dep. at 42). This conflicting evidence on whether Mr. Tom received—and thus

possesses—the $3,169.24 difference makes summary judgment inappropriate on that amount.

For the $59,947.77 that Mr. Tom agrees he received, his tracking spreadsheets and affidavit show that it all went toward the house or to the Biskers' bankruptcy trustee. Dkt. 54 at 126–27; dkt. 65-12; dkt. 65-13; dkt. 70 at 14. Those designations also account for the few payments that Mr. Tom initially logged but were not completed. Dkt. 65-13. Mr. Gardner and Ms. Herron argue that he kept some of the money instead, but they cite no supporting evidence. Dkt. 64 at 13, 33–34. The lack of evidence showing Mr. Tom's continued possession defeats this part of the money had and received claim because he cannot be liable for money he no longer possesses. *See Watson v. Sears,* 766 N.E.2d 784, 790 (Ind. Ct. App. 2002).

Mr. Tom is thus granted summary judgment on Mr. Gardner and Ms. Herron's money had and received claim except on the disputed $3,169.24.

## IV.
## Conclusion

Mr. Tom's motion for summary judgment, dkt. [51], is **GRANTED** except on the disputed $3,169.24 of Mr. Gardner and Ms. Herron's money-had-and-received claim.

**SO ORDERED.**

Date: 6/27/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Gregory P. Cafouros
KROGER GARDIS & REGAS, LLP
gpc@kgrlaw.com

Vilda Samuel Laurin, III
BOSE McKINNEY & EVANS
slaurin@boselaw.com

Justin W. Leverton
KROGER GARDIS & REGAS LLP
jleverton@kgrlaw.com